# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KELVIN MANON,<br>  Plaintiff,<br><br>v.<br><br>BRANTLY, et al.,<br>  Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PRISONER CASE NO.<br>3:17-cv-758 (JCH)<br><br><br>SEPTEMBER 12, 2017 |

## INITIAL REVIEW ORDER

On May 1, 2017, the plaintiff, Kelvin Manon ("Manon"), an inmate currently housed at MacDougall-Walker Correctional Institution in Suffield, CT ("MacDougall-Walker"), filed a Complaint pro se pursuant to title 42, section 1983 of the United States Code ("section 1983") against Correction Officer Brantly, Correction Officer James, Warden Chapdelaine, Deputy Warden Guadarrama, Deputy Warden Hynes, Counselor Moore, and "C.T.O." Perry for monetary and injunctive relief. Manon is suing the defendants for acting with deliberate indifference to his safety and for violating his due process rights.

This court denied Manon's Motion to Proceed in forma pauperis because his application showed that he had more than sufficient funds to pay the $400.00 filing fee to commence this action. See Order #6. On June 16, 2017, Manon paid the filing fee to proceed with his case.

For the reasons articulated below, his Complaint is dismissed in part.

**I.     STANDARD OF REVIEW**

Pursuant to title 28, section 1915A of the United States Code, this court must review prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 18 U.S.C. § 1915A(b). Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

**II.    FACTUAL ALLEGATIONS[1]**

On July 31, 2016, Correction Officer Brantly propped open Manon's cell door, which permitted another inmate to enter Manon's cell and assault him. Correction Officer James also witnessed the incident. Afterward, Brantly wrote a disciplinary report in which he falsely stated that the physical altercation occurred in the dayroom outside

---

[1] For the purposes of an Initial Review Order, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Williams v. Correction

2

of Manon's cell, despite the fact that James had told him that the altercation occurred inside the cell. The incident was not investigated.

The next day, Manon submitted a written request to Captain Paine to preserve the video surveillance footage of the incident, but Captain Paine refused to produce the footage, stating that he could not review it without a court order. Manon then wrote to Counselor Moore who refused to provide the video footage because Manon's request "was not received in the [required] time frame."

On August 11, 2016, Lieutenant Diaz told Manon that he had reviewed the video and had seen the other inmate enter Manon's cell. Diaz said that she knew Manon was not at fault and "wrote that on her report."

On August 16, 2016, Manon requested assistance from "C.T.O." Perry. Specifically, Manon requested that Perry "take notes of the things [he] needed . . . to defend [him]self" at the disciplinary hearing, review the video from the incident, and determine how much time elapsed after the other inmate entered his cell before any prison official noticed. He also asked her to take a statement from his cell mate, Paredes. Perry did not honor any of Manon's requests.

Unsatisfied, Manon wrote to Warden Chapdelaine and Deputy Wardens Guadarrama and Hynes on August 19, 2016, requesting all written reports of the July 31 incident, but he never received a response from any of them. That same day, Manon was moved to Q-Pod, a unit that houses inmates who have been sanctioned for disciplinary reports. The Q-Pod unit also has inadequate plumbing, which created "a

---

Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).

serious threat to [Manon's] physical and mental well being . . . ." A few weeks later, he was moved to N-Pod, a similar unit. There, Manon learned that the inmate who had assaulted him had not been issued a disciplinary report.

On September 22, 2016, Manon submitted a grievance for prison officials' failure to respond to his requests for information about the incident, which was later rejected. That same week, he was moved to another disciplinary housing unit.

On September 29, 2016, Manon was transferred to general population and placed in a cell adjacent to where the inmate who had assaulted him was staying. Manon feared for his safety because the other inmate had "access to the same things as [him]." Manon believes that the decision not to discipline the other inmate is part of a conspiracy to cover up the July 31 incident.

On November 8, he requested from Counselor Moore copies of reports on the July 31 incident and information regarding his disciplinary ticket. Three months later, Manon received the requested information, but he "felt like [he] was given what [officials] wanted [him] to see only and not all of it." Lieutenant Diaz's report, which allegedly stated that he had seen the other inmate enter Manon's cell on July 31, was not included in the information provided to Manon. None of the reports given to Manon state that he had a physical altercation with another inmate. Three prison officials reported that the video footage taken of the incident do not capture the physical altercation because there was a pillar blocking the view of the camera lens.

## III. ANALYSIS

Manon is suing defendants Brantly, James, Chapdelaine, Guadarrama, and Hynes for acting with deliberate indifference to his safety, in violation of his Eighth Amendment protection against cruel and unusual punishment. He is suing defendants Moore and Perry for violating his procedural due process rights based on their failure to assist him in procuring evidence in his defense against the disciplinary sanctions imposed by prison officials. To remedy these alleged violations, Manon seeks monetary damages and an order that Brantly, James, Moore, and Perry be suspended for six months without pay.

### A. Claims for Relief

Manon does not specify in his Complaint whether he is suing the defendants in their individual or official capacities. To the extent he seeks monetary damages against the defendants in their official capacities, those claims are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159 (1985); Quern v. Jordan, 440 U.S. 332, 342 (1979). All such claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

Furthermore, this court cannot order disciplinary action against the defendants. See Osuch v. Gregory, 303 F. Supp.2d 189, 194 (D. Conn. 2004) (prisoner has no constitutional right to have defendants prosecuted or disciplined). Therefore, his request that defendants Brantly, James, Moore, and Perry be suspended for six months without pay is also DISMISSED.

### B. Claims Against Chapdelaine, Guadarrama, and Hynes

5

Manon's allegations against Chapdelaine, Guadarrama, and Hynes include allegations that each of these defendants "allow[ed] . . . unethical conduct and . . . cruel and unusual punishment," Compl. at 15, and that each defendant failed to provide Manon with the written documents related to the July 31, 2016 incident, Compl. at 11.

With respect to Manon's allegations that the Chapdelaine, Guadarrama, and Hynes permitted unethical and cruel and unusual conduct to occur under their supervision, which the court construes as a deliberate indifference claim, Manon has failed to state a claim of personal involvement by these three defendants. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); see also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of respondeat superior does not suffice for claim of monetary damages under § 1983). Personal involvement cannot be established simply by showing that a defendant was in a supervisory role over one or more persons who violated a plaintiff's constitutional rights. See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (claim for monetary damages against Commissioner of Correction requires showing more than linkage in prison chain of command); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977) (fact that Commissioner was in high position of authority insufficient basis for personal liability).

A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the

6

deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event.  Wright, 21 F.3d at 501; Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).  "In addition, supervisory liability may be imposed where an official demonstrates gross negligence or deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place."  Wright, 21 F.3d at 501.  The plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).  Manon's factual allegation against Warden Chapdelaine, Deputy Warden Guadarrama, and Deputy Warden Hynes that he sent them a request for all written reports of the July 31 incident is insufficient to show the necessary gross negligence or deliberate indifference to his constitutional rights.  See Smith v. Conn. Dept. of Corr., No. 3:05CV960 (HBF), 2007 WL 678549, at *4 (D. Conn. Mar. 1, 2007) (holding that "[f]or the purposes of Section 1983 . . . personal involvement cannot be established based on the receipt of a letter or grievance" and collecting cases).

In addition, Manon does not allege that he alerted Chapdelaine, Guadarrama, or Hynes to any unlawful or unconstitutional behavior, but only that he sent them a request for written documents.  Therefore, even if the court accepted Manon's argument that notifying supervisory actors by letter would be enough to make them personally involved, his claim would still fail because he has not pled facts indicating that his letter

put these defendants on notice of the alleged constitutional and statutory violations. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("Because [the plaintiff] fails to allege that he alerted these two defendants of actions barred by the Constitution or federal law, he fails to state a claim that they were involved in conduct barred by section 1983.").

Similarly, Manon's allegation that Chapdelaine, Guadarrama, and Hynes ignored his request for written reports, which the court broadly construes as an allegation of a procedural due process violation, is not sufficient to allege personal involvement on the part of these defendants. See Atkins v. Cnty. of Orange, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003) ("[A]llegations that an official ignored a prisoner's letter is not enough to establish personal involvement."). There is no indication in the Complaint that any of these three defendants had a duty to supply Manon with the relevant documents; to the contrary, Manon's Complaint states that he was informed that Officer Moore was responsible for the relevant documents, and in fact did provide him with documents eventually (although Manon asserts that Moore refused to provide him with the relevant surveillance footage and withheld exculpatory documents). Compl. at 13.

Therefore, Manon's claims against Warden Chapdelaine, Deputy Warden Guadarrama, and Deputy Warden Hynes are DISMISSED for failure to plead sufficient personal involvement.

  C. <u>Deliberate Indifference to Safety</u>

Manon claims that defendants Brantly and James violated his Eighth Amendment

protection against cruel and unusual punishment by acting with deliberate indifference to safety when they permitted another inmate to enter his cell and assault him.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations omitted); see also Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). To state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, Manon must show that the alleged conduct was sufficiently serious and that Brantly and James acted with a sufficiently culpable state of mind, that is, that they were "deliberate[ly] indifferen[t]" to Manon's safety. Farmer, 511 U.S. at 834. In other words, Brantly and James must have been aware that Manon faced an excessive risk to his health and safety and ignored that risk. See id. at 837. To determine whether Manon faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). Moreover, to obtain an award for damages against either defendant, Manon must show that he was personally liable for the alleged constitutional violation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).

In this case, Manon alleges that Brantly propped open the door to his cell, which allowed another inmate to enter his cell and assault him. Compl. at 9. He further states that the other inmate had no reason to be on his tier, let alone in his cell. Id. James

9

allegedly witnessed the incident and did nothing to prevent the assault. Id. at 9, 13. Brantly then allegedly lied in a disciplinary report by stating that Manon and the other inmate physically fought in the dayroom when, in fact, the incident occurred inside Manon's cell. Id. at 13. Construed liberally, these allegations state a plausible Eighth Amendment claim of deliberate indifference to safety.

      D.      <u>Procedural Due Process</u>

Manon claims that defendants Moore and Perry violated his right to due process by refusing to provide him with the video surveillance footage and other evidence which were necessary to prepare his defense against disciplinary sanctions for the July 31 incident. Based on these allegations, the court construes Manon's claim as a violation of procedural due process.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the Supreme Court held that due process requires procedural protections before a prisoner could be deprived of a protected liberty interest. In finding a protected liberty interest in <u>Wolff</u>, the Court noted that the right at issue, good time credit, was statutorily provided by the State of Nebraska. In <u>Sandin v. Conner</u>, 515 U.S. 472, 484–85 (1995), the Court rejected the plaintiff's argument that prison discipline "encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation [creating a liberty interest]." In so doing, the Court explicitly noted that the disciplinary segregation which was the plaintiff's basis for his section 1983 claim "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" because "disciplinary segregation, with insignificant exceptions, mirrored those

conditions imposed upon inmates in administrative segregation and protective custody" and therefore "did not exceed similar, but totally discretionary, confinement either in duration or degree of restriction." Id. at 486. Thus, a plaintiff "has a protected liberty interest only (1) if the state has created a liberty interest in a statute or regulation and (2) deprivation of that interest caused plaintiff to suffer an 'atypical and significant hardship in relation to the ordinary incidents of prison life.'" Cruz v. Prior, No. 3:16-cv-1303 (VAB), 2016 WL 5348571, at *2 (D. Conn. Sept. 23, 2016).

Manon's Complaint suggests, though he does not explicitly state, that after the July 31 incident, he was placed in segregated housing until August 19, 2016, without a disciplinary hearing. Compl. at 9, 11. He implies that during this time he had access to a water fountain with low pressure out of which he did not feel safe drink, resulting in dehydration. Id. at 11. It is not clear from the Complaint whether Manon had access to other sources of water, nor is it clear whether anything was wrong with the water fountain water aside from touching the fountain itself. Manon further asserts that on August 19, 2016, he was transferred to a unit for inmates with disciplinary sentences, and on September 9, 2016, was transferred again to another unit "not different from ticket block," and states that he was "still getting punished even after charges were dropped." Id. at 11, 13. He does not specify in what way or to what extent the conditions in these units differed from that of the conditions in the general population. Finally, Manon states that he was transferred to the general population on September 29, 2016. Id. at 13. He therefore alleges that he was in segregated housing for

11

nineteen days, and in some form of disciplinary housing for an additional forty-one day, for a total of sixty days of disciplinary housing.

In <u>Walker v. Bates</u>, 23 F.3d 652, 656 (2d Cir. 1994), the Second Circuit held that, because prison discipline involving restrictive housing implicates a due process liberty interest, the <u>Wolff</u> requirements of due process applied to disciplinary hearings resulting in restrictive housing sanctions. However, the Second Circuit has since specified that "[a] prisoner's liberty interest is implicated by prison discipline . . . only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Davis v. Barrett</u>, 576 F.3d 129, 133 (2d Cir. 2009) (quoting <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004)). As the Court of Appeals explained in <u>Davis</u>:

> Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement. . . . [R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual. We have also stated that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.

<u>Id.</u> (internal quotations omitted).

<u>Davis</u> is not directly on point because Manon is incarcerated in a Connecticut facility, and the plaintiff in <u>Davis</u> was in the custody of the State of New York.

12

Therefore, the first question for this court is whether the State of Connecticut has created a right to be free from disciplinary segregation such as would satisfy the first of the two Sandin requirements.

State of Connecticut Department of Corrections Administrative Directive 9.5 ("Directive 9.5") states that "punitive segregation shall be for a definite period of time," based on the classification of the offense. Directive 9.5 at ¶ 10(B). Directive 9.5 further provides that, if an inmate does not plead guilty to the disciplinary offense charged, the inmate will be provided with an "advocate" who "shall meet with the inmate at least 24 hours prior to the hearing, review all submitted documentation and evidence . . . , assist the inmate in preparing a defense, and document his/her conclusions and recommendations." 9.5(25). Directive 9.5 further details the procedures to be followed during the hearing itself, including that "[t]he inmate shall be given an opportunity to present the inmate's version of the offense" and "to present witness testimony." Directive 9.5 at ¶ 31(I).

In light of the procedural protections that the governing Directive provides, the court finds that Connecticut has created a protected liberty interest in being free from disciplinary segregation. Although other courts do not appear to have reached this precise question, both the Connecticut Supreme Court and other courts in this District have reached a similar conclusion with respect to administrative segregation. See Vandever v. Comm'r of Corr., 315 Conn. 231 (2014); Ellerbe v. Jasion, No. 3:12-cv-00580 (MPS), 2015 WL 1064739, at *4 (D. Conn. Mar. 11, 2015) (collecting cases).

However, Manon's claim fails on the second prong of the <u>Sandin</u> standard, namely the requirement that the disciplinary segregation in question must impose a "substantial and atypical hardship" resulting from disciplinary segregation. As described above, Manon has alleged only 19 days in segregated housing, and an additional 41 days in some kind of special housing unit for people with disciplinary records. With respect to both the first 19 days and the subsequent 41 days, it is unclear what the housing conditions were like or how they differed from the general population at MacDougall-Walker. The only fact asserted with respect to the conditions of confinement in disciplinary segregation is that the water fountain to which Manon had access "had no preasure [sic] and the little water that trickled traveled through rusty, mold-like and different color metal." Compl. at 11. Although Manon asserts that he "[felt] dehydrated" because of this problem with the water fountain, it is unclear whether he had access to other sources of water. In any event, it is clear that this water fountain was only a problem for Manon for the 19 days he spent in segregated housing. On these facts alone, the court cannot conclude that Manon has adequately plead "substantial and atypical hardship," particularly given the presumption that fewer than 101 days in disciplinary housing ordinarily does not rise to the level of "substantial and atypical hardship." <u>See</u> <u>Ellerbe v. Jasion</u>, 2015 WL 1064739, at *3 ("Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required.") (quoting <u>Palmer v. Richards</u>, 364 F.3d 60, 64–65 (2d Cir. 2004)). Manon's due process claims are therefore dismissed for failure to plead a

14

protected liberty interest such that due process rights attach.  However, Manon is given leave to replead this claim if he can state facts to support a substantial and atypical hardship despite the relatively brief duration of his disciplinary segregation.

In light of the court's conclusion that Manon has not alleged sufficient facts with respect to the liberty interest at stake, it is not necessary for the court to determine whether Manon received due process.  However, given that Manon may replead his Complaint if sufficient facts exist to support a protected liberty interest, in the interests of efficiency the court notes that, if such a liberty interest exists, Manon has pled facts which state a due process violation.  Where a protected liberty interest is at stake, the Supreme Court has held that prisoners must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67).  Manon has alleged that he did not receive documentation explaining the charges against him, that when he eventually received documentation it was incomplete, and that he never received a hearing concerning the charges against him.  Therefore, it is the view of the court that Manon has alleged facts showing a lack of due process.

Furthermore, the court notes that Manon has sufficiently alleged facts showing that, if Manon's due process rights were violated, Moore was personally involved in that violation.  Manon alleges that Moore violated his due process rights by withholding

certain documents related to the July 31, 2016 incident, namely Lieutenant Diaz's report, and either withheld or destroyed evidence in the form of video surveillance evidence, both of which Manon asserts would corroborate his claim that the inmate who attacked him did so in his cell. Compl. at 13. These allegations are sufficient to state a due process claim against Moore.

However, the court is not persuaded that Manon has a due process claim against Perry, even assuming that he states a claim of substantial and atypical hardship with respect to the disciplinary segregation. Manon asserts that Perry violated his due process rights by failing to adequately assist him with his disciplinary hearing. Specifically, he alleges that he asked Perry to take a statement from his cell mate, Paredes, review the surveillance video from July 31, 2016, and pick up a statement he had written from his cell. Id. Manon alleges that, despite this request, Perry did not assist him in the ways that he requested. Id. As described above, Directive 9.5 gives Manon the right to an advocate to assist him with his hearing. On the other hand, the minimum due process rights that the Supreme Court has recognized with respect to disciplinary proceedings in prisons—including the right to a written notification of the charges, an opportunity to present defense evidence, and a written explanation of the outcome—do not include a right to an advocate.

Furthermore, even assuming that Directive 9.5 is sufficient to create such a right in Connecticut, it is not clear that Perry's performance fell short of the requirements of Directive 9.5. Directive 9.5 only requires that advocates "meet with the inmate at least 24 hours prior to the hearing, review all submitted documentation and evidence . . . ,

16

assist the inmate in preparing a defense, and document his/her conclusions and recommendations . . . ." Directive 9.5 at ¶ 25. Directive 9.5 does not create an obligation on the part of the advocate to follow the inmate's instructions with respect to investigating a disciplinary action, and none of Manon's allegations with respect to Perry's performance suggest that she failed to satisfy the obligations that are stated in Directive 9.5. Indeed, given that Manon did not receive a hearing, it is not clear that Perry had any obligation to Manon under Directive 9.5, which explicitly associates the advocate's responsibilities with preparation for a hearing. For these reasons, even if Manon successfully repleads a substantial and atypical hardship, the court is skeptical that facts exist that would support liability on the part of Perry.

On the other hand, if Manon is able to replead substantial and atypical hardship, it may be that additional entities at MacDougall-Walker are responsible for the absence of due process, in particular the fact that Manon did not receive a hearing or other opportunity to present evidence in his defense. Manon is therefore given leave to join additional defendants in an amended complaint if he can allege facts which state personal involvement on the part of other individuals.

IV. **CONCLUSION**

Manon's Eighth Amendment claim for deliberate indifference to safety may proceed against defendants Brantly and James in their individual capacities for monetary damages only. All other claims are dismissed. Chapdelaine, Guadarrama, Hynes, Moore, and Perry are dismissed as defendants to this action.

Manon is given leave to replead his Complaint within **twenty-one (21) days** from the date of this Order if he can allege facts to support that his disciplinary segregation imposed a "substantial and atypical hardship" as required by <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  If he does so, he may further amend his Complaint to join one or more additional defendants, assuming that he can allege facts showing personal involvement by any individuals in the absence of due process afforded to him for the disciplinary charges at issue in this case.

The Clerk shall verify the current work addresses of defendants Brantly and James with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order.  The Clerk shall report to the court on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

Brantly and James shall file their response to the complaint, either an answer or motion to dismiss, within **seven months (120 days)** from the date of this Order.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They may include any and all additional defenses permitted by the Federal Rules.

Discovery, pursuant to Federal Rules of Civil Procedure 26 through 27,

shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

**SO ORDERED** this 12th day of September, 2017 at New Haven, Connecticut.


        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge